(No. 48695.—

JOHN T. ALLEN, JR., Appellant, v. THE COUNTY OF COOK *et al.,* Appellees.—CARL R. HANSEN *et al.,* Appellants, v. THE COUNTY OF COOK *et al.,* Appellees.

*Opinion filed November 15, 1976.*

Keck, Cushman, Mahin & Cate, of Chicago (Robert S. Cushman and Thomas E. Brannigan, of counsel), for appellant John T. Allen, Jr.

Dean J. Sodaro and Geraldine S. DeBoice, of Chicago, for appellants Carl R. Hansen *et al.*

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Henry A. Hauser, Assistant State's Attorney, of counsel), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

On January 29, 1976, plaintiff, John T. Allen, Jr., "a citizen and taxpayer, on behalf of himself and all others similarly situated in Cook County," filed this action against defendants, the County of Cook, George W. Dunne, president of the Board of Commissioners of Cook County, and the other 14 incumbent members of the Board, seeking a declaratory judgment that Cook County Ordinance No. 75—0—34, enacted on October 20, 1975, was invalid, and an injunction to prevent the appropriation of money "in excess of $2500.00 without first obtaining the vote of at least two-thirds of the members elected to the Cook County Board." The 10 members of the Board elected from the city of Chicago (hereafter city members), among whom was the president of the Board, represented by the State's Attorney, moved to dismiss the complaint. The five members of the Board elected from outside the city (hereafter suburban members), represented by their own attorney, filed an answer admitting the allegations of plaintiff's complaint, and a counter-complaint against the county and the 10 city members of the Board, seeking substantially the same relief that was requested in plaintiff's complaint. Floyd T. Fulle, a suburban member, had

resigned on December 9, 1975; Joseph A. Tecson was elected to fill the vacancy and became a member of the Board on February 11, 1976. Tecson was given leave to intervene, and adopted the answer and counter-complaint of the other five suburban members. The 10 city members moved to dismiss the counter-complaint. The circuit court dismissed the complaint and counter-complaint with prejudice, plaintiff and counter-plaintiffs appealed, and we allowed their motion for direct appeal. Rule 302(b).

It appears from the complaint, the counter-complaint and the accompanying exhibits that a meeting of the Board of Commissioners of Cook County was held on October 20, 1975, "pursuant to adjournment." The 10 city members and five of the six suburban members were present. A motion was made and seconded to approve and adopt an ordinance appropriating $2,000,000 (Ordinance No. 75—0—33) from the motor fuel tax fund to the Regional Transportation Authority. The 10 city members voted "yea" and the five suburban members voted "nay." When the president of the Board announced that the ordinance was approved, a suburban member challenged the announcement and stated that the appropriation measure required a two-thirds vote of the members elected to the Board.

A city member then presented Ordinance No. 75—0—34, which amended Ordinance No. 73—0—8, enacted on February 20, 1973. Ordinance No. 73—0—8 provided that an appropriation "beyond the sum of $5000" must be "authorized by a vote of at least two-thirds of the members elected to the said county board." Ordinance No. 75—0—34, in pertinent part provided:

> "No money shall be appropriated or ordered paid by said County Commissioners beyond the sum of $5,000.00, unless such appropriation shall have been authorized by a vote of a majority of the members elected to said county board."

The ordinance, as did also Ordinance No. 73—0—8, recited that it was "specifically intended to supersede Section 61.6 *** of 'An Act to revise the law in relation to counties'" (Ill. Rev. Stat. 1975, ch. 34, par. 951), which in pertinent part provided:

> "No money shall be appropriated or ordered paid by said county commissioners beyond the sum of $2,500, unless such appropriation shall have been authorized by a vote of at least two-thirds of the members elected to the said county board."

The 10 city members voted for, and the five suburban members voted against, the adoption of Ordinance No. 75—0—34. The $2,000,000 appropriation to the Regional Transportation Authority was then reconsidered, the 10 city members voted for, the five suburban members voted against its adoption, and the president of the Board announced that it was adopted pursuant to the provisions of Ordinance No. 75—0—34.

Plaintiff contends that the county board was not empowered to enact Ordinance No. 75—0—34 "to supersede" the statute for the reason that it did not involve a power or function pertaining solely to the government and affairs of Cook County, that it violated the equal protection of the laws provisions of the United States and Illinois constitutions and that the meeting at which it was approved did not comply with "An Act in relation to meetings" (Ill. Rev. Stat. 1975, ch. 102, par. 41 *et seq.*) (the Open Meetings Act). The suburban members contend that the ordinance effectively changed the form of government of Cook County, that it apportioned the county contrary to the provisions of the 1970 Illinois Constitution, and that it was adopted contrary to the rules of the Board. We consider first the contention that the ordinance does not pertain solely to the government and affairs of the defendant county.

Plaintiff argues that the appropriation of money by Cook County is of "statewide interest" and therefore the

manner in which it makes its appropriations may be regulated only by State law. He states that "Unlike any other county, the General Assembly was given the authority under Article X, Section 7, of the Illinois Constitution of 1870 to adopt special legislation concerning the management of Cook County"; that "the operation of Cook County government has always been of unique and special interest to the entire State of Illinois"; that "This statewide interest in the affairs of Cook County is reflected in Section 61.6 of the Counties' Act [citation], which was purportedly superseded by the Cook County Board in Ordinance No. 75—0—34"; and that "the appropriation of money by the Cook County Board is clearly of statewide concern because a considerable portion of the funds appropriated by it are State funds." In support of his position he cites *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, *Cummings v. Daley* (1974), 58 Ill. 2d 1, *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, and *Bridgman v. Korzen* (1972), 54 Ill. 2d 74.

In each of these cases we held an ordinance invalid for the reason that the power sought to be exercised by the home rule unit of government did not, within the contemplation of article VII, section 6(a), of the 1970 Constitution, pertain to its "government and affairs." In *Ampersand, Inc.,* the Cook County Board adopted an ordinance directing the clerk of the circuit court of Cook County to collect a county law library fee of $2 to be paid at the time of the filing of the first pleading or other appearance by each party in all civil cases. The ordinance purported to supersede a statute which contained substantially the same provisions except that the ordinance increased the filing fee from $1 to $2. We held the ordinance invalid for the reason that the administration of justice, by virtue of article VI of the 1970 Constitution, was a matter of statewide concern, and the power to impose a condition to the right to litigate in the courts did not pertain to the county's "government and affairs."

*Cummings* and *Paper Supply Company* involved Chicago ordinances which provided for the method of judicial review of administrative decisions made under those ordinances. We held that the method of judicial review of these administrative decisions was not a function pertaining to the government and affairs of the city, and that the determination of the manner or method of such review was not within the powers conferred upon it as a home rule unit.

We do not agree with plaintiff that the rationale of *Bridgman* was that the ordinance was invalid for the reason that Cook County was attempting to exercise power over a matter of statewide concern. The Cook County Board had adopted an ordinance attempting to alter the statutorily fixed dates and frequency of property tax collections. We held the ordinance invalid because "In the process of collecting and distributing tax monies the county acts both for itself and the other taxing bodies authorized to levy taxes on property within the county, and the function thus performed does not pertain to its government and affairs to any greater extent than to the government and affairs of the other taxing bodies for whose benefit it acts." 54 Ill. 2d 74, 78.

The defendant county is a home rule unit of local government and the constitutional and statutory relationship that previously existed between it and the General Assembly, and upon which plaintiff relies in arguing a "state-wide interest" in the appropriations of Cook County, was drastically altered by the 1970 Constitution. As we said in *Kanellos v. Cook County* (1972), 53 Ill. 2d 161, 166:

> "The concept of home rule adopted under the provisions of the 1970 constitution was designed to drastically alter the relationship which previously existed between local and State government. Formerly, the actions of local governmental units were limited to those powers

which were expressly authorized, implied or essential in carrying out the legislature's grant of authority. Under the home-rule provisions of the 1970 constitution, however, the power of the General Assembly to limit the actions of home-rule units has been circumscribed and home-rule units have been constitutionally delegated greater autonomy in the determination of their government and affairs. To accomplish this independence the constitution conferred substantial powers upon home-rule units subject only to those restrictions imposed or authorized therein."

We are of the opinion that the manner in which the defendant county appropriates funds, and whether it does it with the approval of two-thirds or with the approval of the majority of the members elected to its Board is a matter "pertaining to its government and affairs" and that nothing in *Ampersand, Inc., Paper Supply Co., Cummings* or *Bridgman* serves to limit its home rule powers.

We consider next plaintiff's contention that Ordinance No. 75—0—34 is void because it was approved in a meeting of the Cook County Board which did not comply with the Open Meetings Act. He argues that the public and the suburban board members did not have notice that the ordinance would be introduced, discussed and voted upon on October 20, 1975; that the motion of a suburban member for a public hearing was defeated by the vote of the 10 city members; and that the "Ordinance sought to repeal a State statute that had been on the books for almost 100 years and it purported to snuff out any real opposition to the spending programs of the City Commissioners." We note parenthetically that the journal of proceedings of the meeting of the Board of Commissioners of Cook County held on February 20, 1973, at which meeting Ordinance No. 73—0—8 was adopted, shows that 12 of the 14 members present voted for its adoption. The statute to which plaintiff refers had thus been to some

extent superseded as early as 1973, apparently with the approval of at least two of the suburban members. Nothing in the Open Meetings Act required that notice be given that the proposed ordinance would be presented for adoption at that meeting. The public and suburban members had knowledge of the time and place of the meeting, and the meeting was "open" within the meaning of the Act.

The discussion of the remaining issues requires a brief review of the history of Cook County government. At the time of the constitutional convention of 1870 Cook County was governed by a board of supervisors comprised of the township supervisors, a member from each Chicago ward and assistant supervisors from those townships whose population met the statutory requirement. The population of the county had increased rapidly, and the county board, described at the constitutional convention as "unwieldly," had grown to 88 members. The city of Chicago, with approximately seven-eighths of the population of the county, had a minority of the representatives on the County Board of Supervisors. (See Debates and Proceedings of the Constitutional Convention of the State of Illinois 1367 (1870).) The 1870 convention adopted, and the voters approved, article X, section 7 of the Constitution of 1870, which provided:

> "The county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such manner as may be provided by law."

The first statutory grant of power to the new board of commissioners provided that the board "shall exercise the same powers, perform the same duties, be subject to the same rules, regulations and penalties, and receive the same compensation for their services as prescribed by law for the board of supervisors." (Laws of 1871-72, at 308, sec. 2.) Except for appropriations for roads and bridges (see

Rev. Stat. 1874, ch. 34, par. 57), a majority of the Board constituted a quorum and a majority of those present could appropriate any amount of money. (See Rev. Stat. 1874, ch. 34, par. 54.) In 1879 the statute governing the power of the Cook County Board to appropriate money was amended to provide in pertinent part:

"No money shall be appropriated or paid by said county commissioners beyond the sum of five hundred dollars ($500) unless such appropriation shall have been authorized by a vote of at least two-thirds of the members elected to the said county board." Laws of 1879, at 89.

The $500 limit was increased to $1,000 in 1943 (see Laws of 1943, at 554, sec. 1), and to $2,500 in 1963 (see Laws of 1963, at 3137, sec. 1), and this latter provision remains in the statute. See Ill. Rev. Stat. 1975, ch. 34, par. 951.

Article VII, section 3(c), of the 1970 Constitution preserved the existing system of electing members to the Cook County Board "from two districts, Chicago and that part of Cook County outside Chicago" unless changed as provided in section 3(c). Section 5(b) of the Transition Schedule of the 1970 Constitution provided that the membership of the Cook County Board would remain at 15 unless changed in accordance with section 3(c) of article VII, "except that the county board may increase the number if necessary to comply with apportionment requirements."

The provision of the 1870 Constitution for the allotment of the 15 members to be elected to the Cook County Board, preserved subject to "reapportionment requirements" under the 1970 Constitution, gave the city 66.67% of the voting power on the Board and the suburban electorate 33.33%. The adjusted 1970 Census Bureau figures for Illinois showed that Chicago's population of 3,514,868 was 61.80% of the county's population and the suburbs' population of 2,172,168 was 38.20%. On the basis of these new census figures an ordinance to adjust representation on the Board to nine members to be elected

from Chicago and six members to be elected from "that part of Cook County outside Chicago" was submitted to the Board, but the ordinance was defeated by a vote of eight to six, with one abstention. An action under 42 U.S.C. sec. 1983 seeking reapportionment of the Board was then filed in United States District Court. (*Sutton v. Dunne* (N.D. Ill. 1973), 365 F. Supp. 483.) The district court found that the "numerical disparity is constitutionally significant" (365 F. Supp. 483, 487) and ordered the Board to increase its membership from 15 to 16, 10 of the members to be elected from the city and six to be elected from the suburbs. The Board complied with the order, a 16th member was elected, and the Board is now comprised of 10 city members and six suburban members.

Plaintiff argues that "Even if it is admitted that the power to appropriate money relates directly to the government and affairs of Cook County, that power is not at issue here. Surely, the home rule powers granted to the Cook County Board cannot be held to include the right to change the relative power between the City Commissioners and the Suburban Commissioners, which is the real issue of this case. The balance of power on the County Board between the City Commissioners and the Suburban Commissioners is not a matter relating to the local government and affairs of Cook County which can be changed by ordinance adopted by a majority of County Commissioners under the alleged home rule powers."

Underlying plaintiff's argument is the assumption that the balance of power resulting from the constitutionally created 15 member board and the statutory two-thirds majority requirement for the appropriation of funds cannot be disturbed by the Board itself. The "balance of power" to which plaintiff refers and which had existed since 1879 was changed when in compliance with the order entered in *Sutton v. Dunne* a sixth suburban member was elected to the Board. We do not find plaintiff's argument persuasive and we hold that the power to

determine the number of votes necessary to approve an appropriation is a power pertaining to the government and affairs of Cook County.

The suburban members of the Board contend that the shift of power to the city members effected by the ordinance to appropriate substantial amounts of money without the consent of the suburban members, constitutes an unconstitutional change in the form of government of Cook County. They argue:

"The Transition Schedule of the 1970 Illinois Constitution recognized as 'representational' the form of government extant in Cook County *at the time of the adoption of the Constitution* when, in sec. 5(b) on LOCAL GOVERNMENT, it provided for change in that government as follows:

(b) In Cook County, until (1) a method of election of county board members different from the method in existence on the effective date of this Constitution is approved by a majority of votes cast both in Chicago and in the area outside Chicago in a county-wide referendum or (2) the Cook County Board by ordinance divides the county into single member districts from which members of the county board resident in each district are elected, the number of members of the Cook County Board shall be fifteen except that the county board may increase the number if necessary to comply with apportionment requirements.

This section established that the Cook County government at the Constitution's adoption was a lawful one, recognized and substantiated by the only law controlling home rule units, the Illinois Constitution. The Constitution also gives to home rule units the power to change their form of government.

(f) A home rule unit shall have the power subject to approval by referendum to adopt, alter or repeal a form of government provided by law, except that the form of government of Cook County shall be subject to the provisions of Section 3 of this article. 1970 Ill. Const., Art. VII, sec. 6(f).

Section 3(c) of Article VII sets forth the two approved methods for the changing by Cook County of

its form of government, which two methods for change are exactly the same as those given in the Transition Schedule, sec. 5(b) quoted above.

> (c) Members of the Cook County Board shall be elected from two districts, Chicago and that part of Cook County outside Chicago, unless (1) a different method of election is approved by a majority of votes cast in each of the two districts in a county-wide referendum or (2) the Cook County Board by ordinance divides the county into single member districts from which members of the County Board resident in each district are elected. 1970 Ill. Const., Transition Schedule, sec. 5(b).

"If Ordinance No. 75—0—34 is upheld, the form of government for Cook County recognized by the 1970 Constitution will no longer exist. Its representational balance will have been completely upset by the passage of an ordinance by a simple majority vote, and not in accordance with the Constitutional requirements of a county-wide referendum or the approved method of redistricting to single-member districts."

Article VII, section 3(c), of the Constitution of 1970 preserved the two multimember districts of the 1870 Constitution and provided for changes to be approved either in a countywide referendum or for division by ordinance of the county into single-member districts. While section 5(b) of the Transition Schedule provided for changes effected under article VII, section 3(c), and for increases in the number of county board members "if necessary to comply with apportionment requirements" it did not serve to change the number from 15 or to alter the two multimember districts. Nothing in Ordinance No. 75—0—34 affects either the two districts created under article VII, section 3(c), or the number of members of the Board to be elected from those districts, and we hold that its adoption did not effect a change in the county's form of government which falls within the ambit of sections 6(f) or 3(c) of article VII of the Constitution.

Plaintiff contends that Ordinance No. 75—0—34 violates the equal protection of the laws provisions of the

United States Constitution and the Illinois Constitution. He contends that the "discrimination against certain voters condemned in *Baker v. Carr,* 369 U.S. 186 (1962) and *Reynolds v. Sims,* 377 U.S. 533 (1963) is present here" because "in Cook County the vote of a Chicagoan means something on the Cook County Board, whereas the vote of a suburbanite, like the plaintiff Allen, means far less" and concludes that we should find Ordinance No. 75—0—34 void because "the challenged ordinance unconstitutionally diluted plaintiff's vote." Plaintiff's argument does not attack the multimember districts created by article VII, section 3(c), of the 1970 Constitution (see *Fortson v. Dorsey* (1965), 379 U.S. 433, 13 L. Ed. 2d 401, 85 S. Ct. 498; *Whitcomb v. Chavis* (1971), 403 U.S. 124, 29 L. Ed. 2d 363, 91 S. Ct. 1858) or the apportionment of members of the Board between the two multimember districts as a result of *Sutton v. Dunne* (N.D. Ill. 1973), 365 F. Supp. 483. His argument appears to be that the voters in "that part of Cook County outside Chicago," if the six suburban members vote as a bloc, have the constitutional right to veto an appropriation of over $5,000 approved by a majority of the Board. The one man, one vote concept does not create the right for which plaintiff contends.

The suburban members argue that Ordinance No. 75—0—34 is invalid for the reason that in adopting it the Board failed to comply with its own Rules. Rule 2 provides:

> "A majority of the Commissioners entitled by law to be elected shall constitute a quorum for the transaction of business. All questions which shall arise at meetings shall be determined by the votes of the majority of the Commissioners present, except in such cases as are otherwise provided."

Rule 21 provides:

> "These rules may be temporarily suspended by a vote, of two-thirds of all Commissioners, entitled by law to be elected, and shall not be repealed, altered, or

amended unless by concurrence of two-thirds of all Commissioners entitled by law to be elected."

They contend that the phrase in Rule 2 "except in such cases as are otherwise provided" incorporates the two-thirds-vote requirement of the statute (ch. 34, par. 951) and that under Rule 21 this "incorporated" two-thirds-vote requirement of Rule 2 can be changed only by a two-thirds vote of all members entitled by law to be elected. We do not agree. Rule 2, which was adopted by the Board in 1963 and amended in 1971, is patterned after section 53 of "An Act to revise the law in relation to counties," approved March 31, 1874 (Ill. Rev. Stat. 1975, ch. 34, par. 855), which provides:

"A majority of the supervisors of any county shall constitute a quorum for the transaction of business; and all questions which shall arise at meetings shall be determined by the votes of the majority of the supervisors present, except in such cases as is otherwise provided."

The provision for approval of appropriations by two-thirds rather than a majority of the members elected to the Board was not contained in the Rules. The requirement of anything more than the votes of a majority of the members of the Board was "otherwise provided" for only in Ordinance No. 73–0–8 and in section 61.6 of "An Act to revise the law in relation to counties." Nothing in the Board's rules served to prevent the amendment of the ordinance or the supersession of the statute, and Ordinance No. 75–0–34 was validly adopted.

For the reasons stated the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*