*In re* APPLICATION OF JACK L. ANDERSON, County Treasurer and *ex officio* County Collector of Lake County, for an Order of Judgment and Sale Against Real Estate Delinquent for Nonpayment of General Taxes for the Year 1978 and for Judgment Fixing the Correct Amount of Taxes, Paid Under Protest for the Year 1978 (Jack L. Anderson, Applicant-Appellee, v. Rubloff and Company, Objector-Appellant).

Second District No. 2—89—0302

Opinion filed February 23, 1990.

Peter J. Nordigian, of Lonchar & Nordigian, of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Helen S. Rozenberg and Monique R. McIntosh, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Rubloff & Company (Objector) objected to certain tax rates to be levied upon its property and to the validity of the 1978 appropriation

ordinance of the City of Waukegan (City). The tax objection was filed March 6, 1980, in response to the annual application for judgment of Jack L. Anderson, treasurer and *ex officio* county collector of Lake County (Collector).

The Objector paid its taxes under protest. The tax-rate objections were settled, but the validity of the appropriation ordinance of the City remained unresolved. Ultimately, the trial court conducted an evidentiary hearing and granted judgment to the Collector in the amount of $27,726.16. The Objector appeals and sets forth five arguments why the appropriation ordinance is invalid: (1) the City failed to enact an appropriation ordinance within the time prescribed by law; (2) the ordinance was not passed over the veto of the mayor; (3) passage of the ordinance was not shown as evidenced by publication in pamphlet form; (4) the appropriation ordinance was not properly passed at a time when the home rule powers were in effect; and (5) the City could not extend the time within which to pass its appropriation ordinance under home rule powers because this would create an extraterritorial effect. We reverse the judgment and remand the cause with directions.

Section 8—2—9 of the Illinois Municipal Code (Code) provides that the appropriation ordinance of a City such as Waukegan be passed within the first quarter of its fiscal year. (Ill. Rev. Stat. 1977, ch. 24, par. 8—2—9.) The City council of Waukegan considered its proposed, 1978 appropriation ordinance on July 31, 1978, and defeated the proposed ordinance after numerous attempts to amend it. At the next meeting of the City council on August 7, 1978, the mayor stated that the ordinance of the prior week was dead and Alderman Serdar was proposing another ordinance, using the former one as a draft copy. Alderman Serdar stated that he was presenting a new ordinance which he felt was a compromise. Alderman Hoff called for a point of order, stating that the finance committee did not hold a meeting and it had hoped to come back to the council with a complete recommendation. Alderman Domerchie questioned the plan for action to be taken on the appropriation. After numerous changes in the proposal were made, Alderman Serdar again called for a point of order, pointing out that this was a new ordinance. Corporation counsel advised the council that, although the Code required the appropriation to be passed within the first quarter of the fiscal year, he would recommend that the City exercise its home rule powers to extend the first quarter requirement and he had prepared a necessary insert to accomplish this.

On August 7, a new ordinance purporting to invoke the City's

home rule powers was passed incorporating the following pertinent parts:

"Annual Appropriation Bill of the City of Waukegan, Illinois for the fiscal year beginning May 1, 1978 and ending April 30, 1979.

An ordinance making appropriations of sums of money for all the necessary expenditures of the City of Waukegan, Illinois, and for Corporate purposes for the fiscal year beginning May 1, 1978 and ending April 30, 1979.

WHEREAS, the CITY OF WAUKEGAN is a Home Rule Unit by virtue of the provisions of the Constitution of the State of Illinois of 1970; and

WHEREAS, the City, as a Home Rule Unit, may exercise any power and perform any function pertaining to its government and affairs including the power to tax; and

WHEREAS, Section 8—2—9 of the Illinois Municipal Code states that the corporate authorities shall pass an ordinance within the first quarter of each fiscal year, to be termed the annual appropriation ordinance; and

WHEREAS, the Council does hereby determine that it is empowered by the Constitution of 1970 to extend the period of time within which such passage of the appropriation ordinance can occur as a function pertaining to its government and affairs, and further that it is advisable and necessary and for the best interests of the City of Waukegan to extend the period of time within which such passage can occur; and

WHEREAS, the Council does hereby further determine that the aforementioned part of Section 8—2—9 of the Illinois Municipal Code shall not hereafter be applicable to the passage of appropriation ordinances by the City of Waukegan;

BE IT ORDAINED by the City Council of the City of Waukegan, Illinois:

SECTION 1: That the corporate authorities of the City of Waukegan, Illinois shall have the express power to pass the annual appropriation ordinance at any time prior to the end of the second quarter of each fiscal year.

SECTION 2: That part of Section 8—2—9 of the Illinois Municipal Code (Section 8—2—9, Chapter, 24, Illinois Revised Statutes 1977) stating that corporate authorities shall pass an appropriation ordinance within the first quarter of the fiscal year shall not apply to the City of Waukegan.

SECTION 3: The following sums of money, or as much

thereof *as may be authorized by Law, as may be needed or deemed necessary to defray all expenses and liabilities of the City of Waukegan be and the same are hereby appropriated for the corporate purposes and objects of the City of Waukegan hereinafter specified, for the fiscal year beginning May 1, 1978 and ending April 30, 1979.*

\* \* \*

SECTION 7: This Appropriation Ordinance is adopted pursuant to procedures set forth in the Illinois Municipal Code, provided any limitations in the Illinois Municipal Code in conflict with this Ordinance shall not be applicable to this Ordinance, pursuant to Section 6 of the Article VII of the Constitution of the State of Illinois.

SECTION 8: This ordinance shall be in full force and effect from and after its passage, approval and publication in pamphlet form, pursuant to Ill. Rev. Stat. 1977; ch. 24:125 & 6 [*sic*]."

Objector challenged the validity of the appropriation ordinance in the circuit court by filing its tax objection on January 22, 1980. Objector eventually moved for summary judgment, and its motion was denied by an order dated January 30, 1987. The circuit court found in pertinent part:

"2. That the enactment of the subject appropriation ordinance is a matter which pertains to the 'government and affairs' of the City of Waukegan. Article VII, §6(a) of the Illinois Constitution of 1970;

3. That Ill. Rev. Stat. ch. 24, §8—2—9, does not prohibit a home rule unit from extending the time by which its appropriation ordinance is to be passed and enacted;

4. That the City of Waukegan was not required to act within the first quarter of their fiscal year in order to extend the time by which the subject appropriation ordinance was to be passed and enacted;

5. That the City of Waukegan specifically extended the time by which its appropriation ordinance could be passed and enacted in a proper and valid exercise of its home rule powers;

6. That pursuant to Ill. Rev. Stat. ch. 24, §6—4—2 the validity of the subject appropriation ordinance is not affected by virtue of the fact that the signature of the mayor of the City of Waukegan does not appear on said appropriation ordinance; and

7. That pursuant to Ill. Rev. Stat. ch. 24, §1—2—6, the fact

that the subject appropriation ordinance was published in pamphlet form is prima facie evidence of its contents, passage and legal publication.

WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED:

1. That the subject 1978 City of Waukegan appropriation Ordinance was properly and lawfully enacted."

The Collector then filed his motion for summary judgment. Ultimately, the trial court entered judgment for the Collector in an order dated February 24, 1989. The judgment was based on an evidentiary hearing and on the stipulation of the parties that no evidence other than that considered by the circuit court would be adduced at trial if a trial were held.

The final judgment, in pertinent part, recited the following findings of fact:

"2. That the subject Appropriation Ordinance was passed and approved at a regular meeting of the Waukegan City Council on August 7, 1978, that the Mayor did not orally veto said Ordinance and neither did the Mayor execute a veto in written form.

3. That as the Mayor did not veto said Ordinance, the Ordinance was and is effective despite the absence of the Mayor's signature on said document.

4. That counsel have stipulated that the 1978 Waukegan levy was filed timely, that the Tax Extension Office of the office of the Lake County Clerk extended the subject taxes in a statutorily timely manner and therefor that no Lake County taxpayer suffered prejudice by virtue of the extension of the time by which the City of Waukegan was to file its 1978 Appropriation Ordinance."

The judgment also recited, in pertinent part, the following conclusions of law:

"2. That the enactment of the subject appropriation ordinance is a matter which pertains to the 'government and affairs' of the City of Waukegan. Article VII, §6(a) of the Illinois Constitution of 1970;

3. That Ill. Rev. Stat. ch. 24, §8—2—9, does not prohibit a home rule unit from extending the time by which its appropriation ordinance is to be passed and enacted;

4. That the City of Waukegan was not required to act within the first quarter of their fiscal year in order to extend the time by which the subject appropriation ordinance was to

be passed and enacted;

5. That the City of Waukegan specifically extended the time by which its appropriation ordinance could be passed and enacted in a proper and valid exercise of its home rule powers;

6. That pursuant to Ill. Rev. Stat. ch. 24, §6—4—2, the validity of the subject appropriation ordinance is not affected by virtue of the fact that the signature of the mayor of the City of Waukegan does not appear on said appropriation ordinance; and

7. That pursuant to Ill. Rev. Stat. ch. 24, §1—2—6, the fact that the subject appropriation ordinance was published in pamphlet form is prima facie evidence of its contents, passage and legal publication.

WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED;

1. That the subject 1978 City of Waukegan Appropriation Ordinance was properly and lawfully enacted."

We address first the issue of whether the City properly enacted a valid appropriation ordinance pursuant to its home rule powers then in effect on August 7, 1978. We are guided by this court's recent decision in *In re Application of the County Collector of Kane County* (1988), 172 Ill. App. 3d 897, *aff'd* (1989), 132 Ill. 2d 64. We believe that the appropriation ordinance was not properly enacted on August 7, 1978, and was void as to the present objector because the City failed to observe the statutes and ordinances in force at the time of passage of this ordinance on August 7, 1978.

■■ ■ A municipality is bound by the mandatory provisions of its own existing ordinances and of the statutory procedures in effect at the time of passage of its appropriation ordinance. (*County Collector of Kane County*, 172 Ill. App. 3d at 904.) On August 7, when the City council attempted to invoke its home rule powers in derogation of section 8—2—9 of the Municipal Code, which requires that an appropriation ordinance be passed within the first quarter of each fiscal year, the City council specified that its ordinance would not take effect until after its passage, approval, and publication in pamphlet form and pursuant to the Illinois Municipal Code. The ordinance was not published until August 22, 1978, and, therefore, the home rule power invoked was not in force until that date. Once the City imposed a publication and time lapse requirement upon itself, the City could not avoid it. (*County Collector of Kane County*, 172 Ill. App. 3d at 902-03.) Since the City did not yet have the specified home rule power in place on August 7, the attempt to pass the appropriation

ordinance on that very same date was invalid.

In *County Collector of Kane County*, this court determined, relying on the same principle, that a municipality cannot pass an appropriation ordinance as well as a levy ordinance on the same date where the passage of a valid appropriation ordinance is a prerequisite to the passage of a valid levy ordinance, and where the appropriation ordinance must be published after a certain time lapse. In the present case, since the City's home rule power specified in the ordinance of August 7 was not yet in effect because of the publication requirement, the City council could not also pass an appropriation ordinance on that date based on that home rule power.

■ Additionally, we point out that the council was still bound by the notice, hearing, and publication requirements in effect on that date as enumerated in the Illinois Municipal Code. (See, *e.g.*, Ill. Rev. Stat. 1977, ch. 24, pars. 1—2—4, 1—2—5, 1—2—6, 8—2—9.) Section 8—2—9, for example, in addition to requiring an appropriation ordinance to be passed within the first quarter of the fiscal year, also requires that the annual appropriation be made available to the public at least 10 days prior to its adoption; it provides for notice of a hearing to be published in a newspaper in the county at least 10 days prior to the time of the public hearing which shall state the time and place of the hearing and the place where the copies of the proposed ordinance will be accessible for examination. Our examination of the council's minutes of August 7, 1978, leaves little doubt that these notice and hearing requirements were not adhered to in the present case. It is also clear from the discussion in the minutes that the proposed ordinance was considered a new proposal. It is equally obvious that no 10-day notice and hearing provisions could have been observed between July 31 and August 7, 1978.

Next, we point out that section 10 of "An Act to revise the law in relation to notices" (Ill. Rev. Stat. 1977, ch. 100, par. 8.2) imposes mandatory notice and publication requirements even on home rule municipalities, so that the notice and publication requirements found in the Municipal Code would appear to be mandatory for an appropriation ordinance to take effect. (See, *e.g.*, Ill. Rev. Stat. 1987, ch. 24, par. 1—2—4.) Notwithstanding the ordinance's general saving clause purporting to reject contrary provisions of the Municipal Code, we find that the specific language of the ordinance demonstrates that the City intended to be bound by the statutory scheme of the Municipal Code at least with respect to the procedures, notice and publication requirements of the Code. The City sought to exempt itself only from that part of section 8—2—9 specifying the time by which the

appropriation ordinance must be enacted.

■ Objector also argues that it was improper to invoke home rule powers that have an impermissible, extraterritorial effect on other municipal governments. Section 1 of the City's ordinance states that the corporate authorities of the City shall have the express power to pass the annual appropriation ordinance at any time prior to the end of the second quarter of each fiscal year, that is, October 31. Even assuming that the procedure by which a home rule unit appropriates funds is a matter "pertaining to its government and affairs" and is permissible under the Illinois Constitution (see *Allen v. County of Cook* (1976), 65 Ill. 2d 281, 288; Ill. Const. 1970, art. VII, §6(a)), a procedure which affects other units of government can be considered an impermissible exercise of power because it does not pertain strictly to its own government and affairs. See *Allen*, 65 Ill. 2d at 287; see also *City of Peoria v. Keehner* (1983), 115 Ill. App. 3d 130, 133.

Our supreme court has restated the rule that the Constitution does not give home rule units unrestrained extraterritorial governmental powers by explaining:

"Considering the number of local government units in this State, particularly in and around the Chicago area, which possess or could elect to possess home rule powers, it is apparent that unrestrained extraterritorial exercise of those powers in zoning, taxation and other areas could create serious problems. [Citation.] If we were to rule this tax ordinance constitutional, each home rule unit in the State of Illinois could pass a similar ordinance. The drafters of our constitution limited the extraterritorial exercise of home rule powers to those enacted by the General Assembly, and the General Assembly has the power to limit the extent of such grants of power as may be necessary." *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 78-79.

In the present case, the City's ordinance purports to extend the time for passing an appropriation ordinance until the end of the second quarter of the fiscal year, that is, October 31 of a particular year. This conflicts with the statutory scheme setting the time for the passage of a tax levy ordinance which is to be certified by the county clerk and which directs the county clerk to extend the tax upon the books of the collector of the State and county taxes. (Ill. Rev. Stat. 1977, ch. 24, par. 8—3—1.) The City's financial needs for the coming fiscal year are first projected in an appropriation ordinance. The amount of property taxes and revenues the municipality

anticipates it will actually require for the fiscal year is based on what other revenues it has and will receive and what its expenses will be; this is reflected in the tax levy ordinance. (See Ill. Rev. Stat. 1977, ch. 24, par. 8—3—1.) The Municipal Code specified that the levy ordinance was to be passed and enacted, in this case, by the second Tuesday in September of that year. (Ill. Rev. Stat. 1977, ch. 24, par. 8—3—1.) The later extension of the property taxes by the county clerk was the next step in a long process which results in the collection of property taxes on behalf of the participating municipalities.

We believe that, in this case, the ordinance extending the time for passing the appropriation ordinance is, on its face, an unrestrained exercise of the City's power which has the potential for great abuse and could create serious problems for the county clerk in the timely determination of rates and for the county collector in the orderly collection of taxes. As such, the ordinance has an impermissible, extraterritorial effect. We find that this is an additional reason why the ordinance purporting to extend the time for the enactment of the appropriation ordinance is defective, because it is an abuse of the home rule powers.

In view of our determination that (1) the appropriation ordinance was not validly enacted, and (2) that the City exceeded its home rule powers in passing the extension of time for the passage of an ordinance, we need not address the Objector's remaining arguments. However, we specifically reject Objector's attempt to preserve the issue of the trial court's refusal to permit discovery in the proceedings below. Objector's failure to fully argue this issue in its brief and to present authority therefor results in a waiver of that issue for purposes of further review. *People ex rel. Daley v. Warren Motors, Inc.* (1985), 136 Ill. App. 3d 505, 516.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded with directions to sustain the objections to the taxes extended by the City of Waukegan as to the present objector.

Reversed and remanded with directions.

WOODWARD, J., concurs.

JUSTICE REINHARD, dissenting:

I respectfully dissent from the majority's opinion that the appropriation ordinance at issue was not validly enacted and that the City exceeded its home rule powers in passing the extension of time for

passage of an appropriation ordinance. The majority opinion has set forth three reasons why the appropriation ordinance was not validly enacted and the City exceeded its home rule powers, and I disagree with the analysis and authority cited for each of these propositions. I would affirm the decision of the circuit court.

Turning to the first point, the majority concludes that because "the City did not yet have the specified home rule power in place on August 7, the attempt to pass the appropriation ordinance on that very same date was invalid." (194 Ill. App. 3d 420-21.) The majority fails to cite, nor do I find, any authority supporting the necessary premise that the City did not have any home rule power to pass the appropriation ordinance until it invoked such power by way of ordinance. Home rule power derives from article VII, section 6(a), of the Illinois Constitution of 1970, and I find no authority for the proposition that such power is ineffectual absent its prior invocation by ordinance. In fact, in *Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, the court held that it is not necessary that a home rule municipality declare that its actions are taken under home rule power for that power to take effect. (145 Ill. App. 3d at 552.) Furthermore, in *Sommer v. Village of Glenview* (1980), 79 Ill. 2d 383, our supreme court held that a village trustees' vote not to place a proposition on the ballot constituted an "exercise" of home rule power even absent an ordinance being passed to that effect. (*Sommer*, 79 Ill. 2d at 392-93.) These two cases strongly suggest that it is not necessary to the exercise of home rule power that such power first be invoked by ordinance. Consequently, the City's authority under its home rule powers to pass the appropriation ordinance after the statutory time limit existed at the time the appropriation ordinance was passed and did not depend upon its prior invocation by ordinance. It is further clear that the City was exercising its home rule power as this was expressly stated in the appropriation ordinance. The Objector does not dispute that the City is a home rule unit. Although the majority does not discuss the point, I would further conclude that the City validly exercised its home rule powers in extending the date by which its appropriation ordinance was to be passed and enacted.

I further disagree with the majority's application of *In re Application of County Collector of Kane County* (1989), 132 Ill. 2d 64, to the facts of this case. (I fail to understand why the majority cites to our appellate court opinion in this case when our supreme court has taken the case and decided the precise issue for which the majority cites the appellate court opinion.) In *County Collector of Kane County*, the supreme court determined that a home rule municipality

cannot pass an appropriation ordinance on the same day as a levy ordinance where the passage and publication of a valid appropriation ordinance is a prerequisite, as set forth in the municipality's own ordinances, to the passage of a valid levy ordinance. That principle is inapposite to this case. Here, there is simply no requirement, either in the City's ordinances or otherwise, that an ordinance specifically invoking home rule powers be passed as a prerequisite to the passage of an appropriation ordinance purporting to exercise home rule powers.

As to the majority's second point, that the City was bound by the notice, hearing and publication requirements in effect on August 7, 1978, as enumerated in the Illinois Municipal Code, I find that argument to be waived. As it was not raised in the trial court, it cannot now be raised for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500.) Furthermore, this is the type of case where the waiver rule has particular applicability, as the City was not given the opportunity below to present evidence that it did in fact comply with the notice, hearing and publication requirements.

Finally, I disagree with the majority's conclusion that the appropriation ordinance has an "impermissible, extraterritorial effect." (194 Ill. App. 3d 422.) In this regard, I believe the majority's reliance on *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, is clearly misplaced. In that case, our supreme court stated that unrestrained extraterritorial *exercise of powers* in zoning, taxation or other areas could create serious problems. (89 Ill. 2d at 78-79.) Although the supreme court did use the terminology "extraterritorial effect," it did so in characterizing the scope of the taxing ordinance at issue rather than using the term "effect," as used by the majority here, to mean the impact that the ordinance might have outside of the corporate boundaries. Such a broad interpretation of *Commercial National Bank* would lead to absurd results, as it is possible in many cases to identify some extraterritorial effect resulting from passage of zoning, taxation or other ordinances. Furthermore, *Commercial National Bank* concerned the imposition by a municipality of a tax on services performed outside its corporate boundaries, an issue clearly not present here.

Even were I to interpret language in *Commercial National Bank* to be applicable to the present situation, I would still disagree with the majority opinion. The parties stipulated that the 1978 Waukegan levy was timely filed, that the tax extension office of the Lake County clerk extended the taxes in a statutorily timely manner, and

that no taxpayer of Lake County suffered prejudice as a result of the extension of time to file the 1978 appropriation ordinance. The majority's apparent concern that the extension of the time for passage of an appropriation ordinance by the City would disrupt the tax collection process is unfounded in this case. Because I find no merit in the remaining contentions of the objector, I would affirm the judgment of the circuit court.