BENEFICIAL DEVELOPMENT CORPORATION, Plaintiff-Appellant, v. THE CITY OF HIGHLAND PARK *et al.*, Defendants-Appellees (Tennyson Development Corporation *et al.*, Plaintiffs).

Second District   No. 2—91—1043

Opinion filed December 31, 1992.

Everette M. Hill, Jr., of Arnstein & Lehr, of Chicago, for appellant.

Ken Lodge and Ronald L. Sandack, both of Burke, Smith & Williams, of Chicago, and Erwin W. Jentsch, of Mt. Prospect, for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Beneficial Development Corporation (Beneficial), appeals the declaratory judgment of the trial court in favor of defendants, the City of Highland Park (City) and Shaf Home Builders, Inc. (Shaf). Plaintiff contends the trial court erred in declaring the imposition of certain recapture fees against plaintiff pursuant to a recapture agreement between the City and Shaf was permissible and in awarding only $5,445 for Shaf's alleged trespass to a portion of the property at issue. We affirm.

As a preliminary matter, we address Shaf's motion taken with the case to strike certain portions of Beneficial's brief on behalf of non-parties Tennyson Development Corporation (Tennyson) and Betty Holst (Holst). Shaf contends the brief filed by Beneficial seeks relief on behalf of Tennyson and Holst in violation of this court's order

striking relief sought by nonparties from any motions before the court. We agree.

■ The notice of appeal filed in this case did not name Tennyson or Holst as a party to the appeal. Only Beneficial was named as the plaintiff-appellant in the body of the notice of appeal, and the notice was signed by "Everette M. Hill, Attorney for Plaintiff-appellant Beneficial Development Corporation."

Beneficial argues that because Mr. Hill was the attorney of record for all plaintiffs in the trial court, his signature on the notice of appeal was sufficient to meet the requirements of Rule 303. However, Supreme Court Rule 303 (134 Ill. 2d R. 303) requires all appellants be named in the notice of appeal and the notice be signed by each appellant or his or her attorney. The notice of appeal clearly named Beneficial, and Beneficial alone, as plaintiff-appellant. Accordingly, we consider this appeal to be taken only by Beneficial. See *People v. Krueger* (1986), 146 Ill. App. 3d 530, 533.

Betty Holst owned a five-acre parcel of property in Highland Park, Illinois. Although no plat of subdivision had been filed, in October 1988, Holst sold two of her five acres to Tennyson Development Corporation for $175,000. Simultaneously, Tennyson sold those two acres to Beneficial for $950,000, which included the cost of a 6,000-square-foot house to be constructed on the lots at an estimated cost of $750,000. None of the plaintiffs below applied for a building permit or subdivision approval for their property.

The five acres originally owned by Holst (Holst property) adjoin a 22-acre parcel of land known as the Tara subdivision which is owned by defendant Shaf. The Highland Park city council approved the Tara subdivision preliminary plat on September 6, 1986, and required Shaf to enter into a subdivider's agreement with the City to ensure the completion of all required subdivision improvements. Chapter 151 of the code of ordinances of Highland Park requires subdividers to install water mains, storm and sanitary sewers, streets, sidewalks, streetlights, and other public improvements, as a condition precedent to the acceptance of a final map of any subdivision. (Highland Park, Ill., Code of Ordinances, ch. 151, par. 151.125 *et seq.*) The City and Shaf entered into the subdivider's agreement on May 6, 1987.

Because these improvements benefitted the Holst property, the subdivider's agreement provided for the execution of a recapture agreement requiring the City to reimburse Shaf for a portion of the cost of constructing the improvements at the time the owners of the Holst property apply for subdivision plat approval or wish to tap into, utilize or extend the improvements. The City would collect that por-

tion of the cost from the owners of the Holst property and reimburse Shaf with those monies. The recapture agreement was also entered into on May 6, 1987.

The recapture agreement contained the City engineer's estimate of the total cost of the required improvements. The cost was estimated at $628,000. The total area involved equaled 27 acres: 22 acres in the Tara subdivision and 5 acres in the Holst parcel. Therefore, the City determined that the Holst property owners would be required to reimburse the City for $5/27$ of the public improvement costs—a recapture fee of $116,296. An original copy of the agreement was filed with the recorder of deeds of Lake County to notify persons interested in the subdivision and the Holst property of the fact that there would be a charge for the connection and use of the public improvements constructed under the agreement.

Plaintiff's third amended complaint, which requested a declaration of rights of the parties, alleged that the City assessed certain recapture fees without authority, that the City deprived plaintiffs of their property rights under color of law and that Shaf and the City unlawfully committed a trespass on an easement on plaintiffs' property by constructing a roadway.

Robert Hamilton, a civil engineer, testified for plaintiff at trial. He stated that the on-site improvements to the Tara subdivision did not benefit the Holst property, but most of the off-site improvements such as the street construction, sanitary sewer and water main construction are of use to the Holst property. However, he added that the majority of the storm sewer construction did not benefit the Holst property because it would not drain the Holst property. He did not define what he considered "on-site" improvements. Hamilton stated that the apportionment of $5/27$ of the cost of the water main and sanitary sewer construction to the Holst property was fair and reasonable.

Neil King testified for the defendants at trial. He opined that the improvements benefitted the Holst property. He stated that after the improvements were completed, the value of the Holst property increased by approximately $300,000. He opined that the pavement, sidewalks, curbs, gutters, streetlights, and water and sewer construction all contributed to this enhancement in the value of the Holst property, and that the owners of the Holst property would not be required to install these improvements upon the subdivision of their property.

John Zimmerman, corporation counsel for the City, also testified on behalf of defendants at trial. He stated that in the case of a new development, whenever public improvements are involved, the City

council requires a subdivider's agreement, and where recapture is involved, a recapture agreement is entered into adjunct to the subdivider's agreement.

Don Fielding, a consulting engineer, testified that in 1979 Betty Holst's husband, Brent, now deceased, hired him to prepare an estimate of costs for the subdivision of the Holst property. The improvements proposed for the Holst property in 1979 were similar to those required in the present case, as they were in accordance with the City's subdivision regulations. In 1979 the total cost of those improvements was $160,116.25. Mr. Fielding also prepared a preliminary engineering plan for Shaf's subdivision, Tara. He testified that those improvements, including on-site benefits, benefit the Holst property. However, in his deposition he stated that the on-site improvements did not benefit the Holst property.

James P. Foley, a real estate appraiser hired by plaintiffs below, was deposed by defendants. He stated that the site improvements, sewer, water, curbs, gutters, overhead lighting, and asphalt pavement, enhanced the value of the Holst property.

In its memorandum order, the trial court found that the imposition of the recapture fees pursuant to the recapture agreement was a valid exercise of City's home rule authority. In addition, the court found Shaf's improvement of the easement running through the Holst property was an actionable trespass and that Shaf was liable to plaintiffs in the amount of $5,445 as just compensation.

On appeal, plaintiff Beneficial contends: (1) the trial court erred in declaring the recapture agreement valid; (2) the trial court erred in refusing to reduce the recapture fees required under the agreement; (3) the trial court erred when it found defendants did not violate plaintiff's rights under 42 U.S.C. §1983 (1992); (4) the trial court erred in awarding plaintiffs only $5,445 for the trespass to their property; (5) the trial court erred in refusing to hold the City jointly liable for the trespass; and (6) the trial court erred in refusing to grant a mistrial after it was discovered that one of defendant's witnesses was a member of the same law firm as the City's trial attorney.

Plaintiff argues that the City was not authorized to assess recapture fees for the improvements installed by Shaf. In particular, plaintiff argues that defendants cannot contract to obligate plaintiff, who was not a party to the recapture agreement. Plaintiff also contends the recapture agreement is invalid because it requires plaintiff to pay for a portion of the improvements that do not benefit its property. We disagree.

■ The recapture of costs for improvements installed by subdividers as required by municipalities is a legitimate exercise of municipal power. (See Ill. Rev. Stat. 1991, ch. 24, par. 9—5—1.) Section 9—5—1 of the Illinois Municipal Code (Municipal Code) provides that a municipality and a subdivider may contract for the reimbursement to the subdivider for a portion of the cost of the installation of water mains, sanitary sewers, drains, or other facilities for sewers or drains, the construction of any roadways, or the installation of any traffic signals or other traffic-related improvements charged to owners of property not within the subdivision. Ill. Rev. Stat. 1991, ch. 24, par. 9—5—1.

The contract is to describe the property outside the subdivision that may reasonably be expected to benefit from the facilities, roadways, or improvements required under the contract and shall specify the amount or proportion of the cost of the facilities, roadways, or improvements that is to be incurred primarily for the benefit of that property. Further, the contract is to provide that the municipality shall collect fees charged to owners of property not within the subdivision at any time before the connection to and use of the facilities, roadways, or improvements by the respective properties of each owner. Ill. Rev. Stat. 1991, ch. 24, par. 9—5—1.

Section 9—5—2 of the Municipal Code provides that the contract is to be filed with the recorder of each county in which all or part of the property affected is located. (Ill. Rev. Stat. 1991, ch. 24, par. 9—5—2.) However, these provisions of the Municipal Code do not apply to home rule units, and are not a prohibition to their contractional and associational powers. Ill. Rev. Stat. 1991, ch. 24, par. 9—5—3.

It is uncontested that Highland Park is a home rule municipality. (See Ill. Const. 1970, art. VII, §6.) The constitution permits a home rule municipality to exercise functions pertaining to its government and affairs. These home rule powers are to be construed liberally. (Ill. Const. 1970, art. VII, §6(m).) Our State courts have consistently recognized these broad powers. See *City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495; *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494.

Plaintiff contends the recapture agreement is invalid because the City was not authorized by ordinance to enter into such a contract with Shaf. However, although our supreme court has not precisely defined what constitutes an "exercise" of home rule power, case law suggests it is not necessary to the exercise of home rule power that such power first be invoked by ordinance. (*In re Application of Anderson* (1990), 194 Ill. App. 3d 414, 424 (Reinhard, J., dissenting).)

In *Sommer v. Village of Glenview* (1980), 79 Ill. 2d 383, the court rejected the argument that an ordinance was required to "exercise" the village's home rule power, stating:

> "We think the plaintiffs argue for an overly technical interpretation of the term 'exercise' when they insist that the adoption of an ordinance is a superseding exercise of a home rule power while a vote at a trustees' meeting is not. They are both acts taken by the governing board of a home rule unit, as an assertion of autonomy and independence from State control granted by article VII, section 6, of the 1970 Constitution. (See *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 273.)" (*Sommer v. Village of Glenview* (1980), 79 Ill. 2d at 393.)

This court has found that a home rule municipality "exercised" its home rule powers when its city council voted to authorize certain contract specifications in direct contravention with State law and to award the contract to a certain party in *People ex rel. Bernardi v. City of Highland Park* (1985), 135 Ill. App. 3d 580, *rev'd on other grounds* (1988), 121 Ill. 2d 1.

■ Similarly, in the present case, we find the City properly "exercised" its home rule powers when it authorized the recapture of certain fees through its contract with Shaf. On November 24, 1986, the City council approved the final plat for the Tara subdivision, provided certain conditions were met. One of those conditions was that Shaf submit a subdivider's agreement guaranteeing the completion of all required subdivision improvements. In turn, the subdivider's agreement, signed by the mayor on behalf of the City and by Shaf, provided that the parties would execute a recapture agreement requiring reimbursements to Shaf for construction of certain public improvements. The parties did enter into a recapture agreement which required the owners of the Holst property to pay 5/27 of the total cost of all public improvements required to be made by Shaf. The agreement was filed with the Lake County recorder of deeds.

Plaintiff contends that even if the recapture agreement is a valid exercise of the City's home rule powers, the trial court erred in not reducing the the recapture fees. Plaintiff contends it should not be required to pay for any of the improvements covered by the recapture agreement other than 5/27 of the off-site sanitary sewer and water main improvements. In support of this contention, plaintiff cites section 51.010 of the Highland Park code of ordinances (Code), which authorizes recapture with regard to sanitary or storm sewer or water line extension. However, that section of the Code pertains to private improvements, not public improvements required by the City for new

subdivisions. In addition, as discussed above, the City does not need to pass an ordinance in order to exercise its recapture power. The recapture agreement is sufficient. The agreement provides for the recapture of costs for the construction of improvements that benefit the Holst property.

Although Robert Hamilton testified that only the off-site street, storm and sanitary sewer and water main construction benefit the Holst property, Neil King, Don Fielding and James Foley testified that all improvements made by Shaf at the request of the City benefit the Holst property. The engineer's estimate of construction costs for the Tara subdivision estimated costs for street construction, detention pond and basin construction, sanitary sewer construction, water main construction and storm sewer construction at $628,000. It is the trial court's function to determine the credibility of witnesses and to resolve inconsistencies in testimony, and this court cannot substitute its opinion for the finding of the trier of fact unless its holding is against the manifest weight of the evidence. (*Rybak v. Provenzale* (1989), 181 Ill. App. 3d 884, 897.) We do not believe the trial court's holding is against the manifest weight of the evidence. Because plaintiff's property will benefit from the streets, sidewalks, streetlights, curbs, gutters, sewers, water mains, etc., and because the Holst property constitutes $5/27$ of the total property benefitting from these improvements, we do not find the trial court's judgment upholding the recapture agreement or the amount of fees under the agreement invalid.

■ Plaintiff's next contention on appeal is that the trial court erred in failing to find a violation of plaintiff's civil rights under section 1983 of the Civil Rights Act. (42 U.S.C. §1983 (1992).) We disagree.

Plaintiff contends the recapture agreement and the conditioning of a building permit on the payment of the fees set forth in the agreement result in a "taking" within the meaning of the fifth amendment of the United States Constitution. (U.S. Const., amend. V.) Section 1983 provides in part:

> "Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983 (1992).

Plaintiff is correct that a taking may occur without an actual seizure of land. (*First English Evangelical Lutheran Church v. County of Los Angeles* (1987), 482 U.S. 304, 96 L. Ed. 2d 250, 107 S. Ct. 2378.) However, such a claim is premature until a final decision regarding the application of the ordinance/subdivision regulation is made. *Williamson County Regional Planning Comm'n v. Hamilton Bank* (1985), 473 U.S. 172, 87 L. Ed. 2d 126, 105 S. Ct. 3108.

While the present case is ripe for a declaratory judgment because it involves an actual controversy between the parties (Ill. Rev. Stat. 1991, ch. 110, par. 2—701(a)), it is premature regarding plaintiff's claim for damages under section 1983. Our supreme court has defined "actual controversy" as "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the determination of the controversy or some part thereof." (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 306.) Clearly, the validity of the recapture agreement and its application to plaintiff represents a concrete dispute in need of determination.

However, the central purpose of the declaratory judgment procedure is to allow the court to address a controversy one step sooner than normal after the dispute has arisen, but before steps are taken which could give rise to a claim for damages or other relief. (*Senese v. Climatemp, Inc.* (1991), 222 Ill. App. 3d 302, 314; *Kaske v. City of Rockford*, 96 Ill. 2d at 306.) By the very nature of this action, there has not been a final decision regarding the application of the recapture agreement to the Holst property. The parties stipulated that none of the plaintiffs in the action below applied for building permits or subdivision approval for their property. These actions trigger the recapture of fees under the agreement. As such, plaintiff's claim for damages under section 1983 is premature.

■ Plaintiff also contends the trial court erred in awarding only $5,445 in damages for Shaf's trespass and for failing to find the City jointly liable for the trespass. However, plaintiff fails to cite authority in support of this contention.

A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 608.) Supreme Court Rule 341(e)(7) requires, among other things, that an appellant's brief must contain citations to the relevant authority supporting the argument advanced on appeal. (*Britt v. Federal Land Bank Association*, 153 Ill. App. 3d at 608.) A contention that is supported by some argument but no authority whatsoever does not satisfy the requirements of Rule 341(e)(7). (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 942-43.) The

law is clear that bare contentions without argument or citation of authority do not merit consideration on appeal. (*Spinelli v. Immanual Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 401.) Accordingly, these contentions are waived for failure to cite authority.

■ Plaintiff's last contention on appeal is that the trial court erred in failing to grant a mistrial after John Zimmerman's testimony because at the time of trial, Zimmerman was a member of the same law firm as the City's trial attorney, Erwin Jentsch. Zimmerman, corporation counsel for the City, testified regarding the application of certain City ordinances and the City's recapture procedures.

Rule 3.7(c) of the rules of professional conduct provides, with exceptions not at issue here, that a lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm may be called as a witness. (134 Ill. 2d R. 3.7(c).) Moreover, even in cases where the testifying attorney is himself/herself an advocate in the case, a trial court may permit such testimony if the court finds it necessary. (*Serpico v. Urso* (1984), 127 Ill. App. 3d 667, 673.) The rule prohibiting a lawyer from acting as both advocate and witness in the same case reflects a number of important considerations, *i.e.*, permitting an advocate in a matter to testify as a witness in that matter may unfairly prejudice the case of his or her client or the opposing party. (*Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 395-96.) Those policy considerations are not implicated to the same extent when it is merely an attorney from the advocate's own firm who is a witness in the case. Thus, we conclude the trial court properly denied plaintiff's motion for mistrial.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS, P.J., and BOWMAN, J., concur.